UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
**SHANTEL TALLEY**, as Parent and Natural Guardian of **A.C.**, and **SHANTEL TALLEY**, Individually,

24-cv-2094 (JHR)

*Plaintiffs,*

-v-

The **NEW YORK CITY DEPARTMENT OF EDUCATION**, and **DAVID C. BANKS***,* in his official capacity as Chancellor of the New York City Department of Education,

*Defendants.*
----------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Rory J. Bellantoni, Esq. (RB2901)
Brain Injury Rights Group, Ltd.
*Attorneys for Plaintiff*
300 East 95th, Suite 130
New York, New York 10128
Rory@pabilaw.org

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………i

PRELIMINARY STATEMENT………………………,……………………………………..1

STATEMENT OF FACTS………………………………………………………...……2

LEGAL STANDARD……………………………………………………………….….5

A. Dismissal under 12(b)(1)……………………………………………………….5

B. Dismissal under 12(b)(6)……………………………………………………….6

C. Pendency Under IDEA………………………………………………………....6

ARGUMENT……………………………………..……………………………………..7

I. PLAINTIFF'S CLAIMS ARE NOT MOOT…..…………………………………...…7

II. PLAINTIFF HAS STATED A CLAIM UNDER § 1983…………………………..…11

III. SUMMARY JUDGMENT FOR PLAINTIFF SHOULD BE GRANTED…………………..13

A. Summary Judgment Standard…………………………………………………....13

B. Legal Framework…………………………………………………………………...14

C. Plaintiff is entitled to an automatic injunction under § 1415(j)……………….….15

D. Plaintiff is entitled to Pendency payments commencing at the start of the 2023-2024 school year…………………………………………………………..15

CONCLUSION…………………………………………………………………………20

# TABLE OF AUTHORITIES

***Page(s)***

**Federal Cases**

*24th Senatorial Dist. Republican Comm. v. Alcorn*,
820 F.3d 624 (4th Cir. 2016) .................................... 6, 7

*A.C. ex rel. M.C. v. Bd. of Educ. of The Chappaqua Cent. Sch. Dist.*,
553 F.3d 165 (2d Cir. 2009) .................................... 13

*A.R. ex rel. R.V. v. New York City Dep't of Educ.*,
407 F.3d 65 (2d Cir. 2005) .................................... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................... 6, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................... 6, 12

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016) .................................... 6, 7

*Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*,
400 F.3d 508 (7th Cir. 2005) .................................... 15

*C.P. v. Kankakee Cmty. Unit Sch. Dist. & Ill. State Bd. of Educ.*,
2005 U.S. Dist. LEXIS 56437 (C.D. Ill. 2005) .................................... 16

*D.D. ex rel. V.D. v. New York City Bd. of Educ.*,
465 F.3d 503 (2d Cir. 2006) .................................... 10

*Davis v. Banks*,
2023 U.S. Dist. LEXIS 160092, at *4 (S.D.N.Y. Sep. 11, 2023) .................................... 7, 14

*Deferio v. City of Syracuse*,
770 Fed. App'x 587 (2d Cir. 2019) .................................... 12

*Doe v. E. Lyme Bd. of Educ.*,
790 F.3d 440 (2d Cir. 2015) .................................... 7, 8, 14, 16

*Drinker by Drinker v. Colonial Sch. Dist.*,
78 F.3d 859 (3d Cir. 1996) .................................... 18

*E.S. v. Katonah-Lewisboro Sch. Dist.*,
796 F. Supp. 2d 421 (S.D.N.Y. 2011) .................................... 11

*Edison v. United States*,
822 F.3d 510 (9th Cir. 2016) ........ 6, 7

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ........ 9

*Frost v. New York City Police Dep't*,
980 F.3d 231 (2d Cir. 2020) ........ 13

*G.M. ex rel. R.F. v. New Britain Bd. of Educ.*,
173 F.3d 77 (2d Cir. 1999) ........ 11

*Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*,
368 F. Supp. 2d 313 (S.D.N.Y. 2005) ........ 15

*Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*,
104 F.3d 1256 (11th Cir. 1997) ........ 6, 8

*Henry v. Sch. Admin. Unit No. 29*,
70 F. Supp. 2d 52 (D.N.H. 1999) ........ 17

*Honig v. Doe*,
484 U.S. 305 (1988) ........ 9, 15

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*,
818 F.3d 193 (5th Cir. 2016) ........ 6

*John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit*,
318 F.3d 545 (3d Cir. 2003) ........ 15

*Johnson ex rel. Johnson v. Special Educ. Hearing Off., State of Cal.*,
287 F.3d 1176 (9th Cir. 2002) ........ 18

*L.V. v. N.Y.C. Dep't of Educ.*,
2005 U.S. Dist. LEXIS 20672 (S.D.N.Y. Sep. 15, 2005) ........ 13

*Lunceford v. D.C. Bd. of Educ.*,
745 F.2d 1577 (D.C. Cir. 1984) ........ 16

*M.H. v. New York City Dep't of Educ.*,
685 F.3d 217 (2d Cir. 2012) ........ 14

*M.R. v. Ridley Sch. Dist.*,
744 F.3d 112 (3d Cir. 2014) ........ 16

*M.W. ex rel. S.W. v. New York City Dep't of Educ.*,
725 F.3d 131 (2d Cir. 2013) ........ 6, 14

*Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*,
386 F.3d 158 (2d Cir.) .......... 15, 18, 19, 20

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) .......... 6

*Mrs. B. v. Milford Bd. of Educ.*,
103 F.3d 1114 (2d Cir. 1997) .......... 14

*Mrs. M. ex rel. her daughter "T" v. Tri-Valley Cent. Sch. Dist.*,
363 F. Supp. 2d 566 (S.D.N.Y. 2002) .......... 11

*Petties v. D.C.*,
881 F. Supp. 63 (D.D.C. 1995) .......... 10

*Rodiriecus L. v. Waukegan Sch. Dist. No. 60*,
90 F.3d 249 (7th Cir. 1996) .......... 15

*S.H.W. v. N.Y.C. Dep't of Educ.*,
2023 U.S. Dist. LEXIS 57021 (S.D.N.Y. Mar. 31, 2023) .......... 7, 15, 20

*Schwebel v. Crandall*,
967 F.3d 96 (2d Cir. 2020) .......... 13

*Spilsbury v. D.C.*,
307 F. Supp. 2d 22 (D.D.C. 2004) .......... 16, 17

*Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*,
778 F.3d 502 (5th Cir. 2015) .......... 6, 8

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*,
752 F.3d 145 (2d Cir. 2014) .......... 15

*T.Y. v. New York City Dep't of Educ.*,
584 F.3d 412 (2d Cir. 2009) .......... 13

*Thomas v. Cincinnati Bd. of Educ.*,
918 F.2d 618 (6th Cir. 1990) .......... 18

*United States v. Concentrated Phosphate Exp. Ass'n*,
393 U.S. 199 (1968) .......... 9

*Ventura de Paulino v. New York City Dep't of Educ.*,
959 F.3d 519 (2d Cir. 2020) .......... 7, 14

**Federal Statutes**

20 U.S.C. § 1400 .......... 1

20 U.S.C. § 1415(b)(6), (f) .......... 7, 14

20 U.S.C. § 1415(i)(3)(B)(I) .......... 11

20 U.S.C. § 1415(i)(3)(B)(i)(I) .......... 11

20 U.S.C. § 1415(j) .......... 1, 14, 15, 16

**State Statutes**

N.Y. Educ. Law § 4404(1) (McKinney) .......... 7, 14

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) .......... 6

**Federal Regulations**

34 C.F.R. § 300.518 .......... 14

**State Regulations**

N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5) .......... 2

N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6 (h)(4) .......... 17

## PRELIMARY STATEMENT

Plaintiff respectfully submits this Memorandum of Law in opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, and in support of her Cross-Motion for Summary Judgment. This action seeks to enforce Plaintiff's rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, specifically the "stay-put" provision of 20 U.S.C. § 1415(j), which mandates uninterrupted maintenance of Plaintiff's pendency placements. Plaintiff brings this action on behalf of, and for, A.C. for an order seeking enforcement of his pendency rights and summary judgment in favor of Plaintiff.

Plaintiff's case is ripe for review, as the Department of Education ("DOE") has failed to fulfill its obligation under the IDEA to fund the student's educational placement during pending due process proceedings. The DOE's delay in providing necessary funding has disrupted the student's right to a "free appropriate public education" ("FAPE"), effectively denying the required support. Defendants' arguments for dismissal lack merit, as vested pendency rights confer jurisdiction, and Defendants have failed to fund their conceded pendency obligations. Further, the Court should grant summary judgment in favor of Plaintiff to ensure uninterrupted educational support under IDEA's pendency provisions.

Plaintiff requests that this Court enter judgment against Defendants and in favor of Plaintiff declaring that she is entitled to an order declaring A.C.'s pendency placement/program to be at iBRAIN, with all related services, including transportation and nursing, throughout the administrative and judicial proceedings relative to her Due Process Complaint ("DPC") for the 2023–2024 school year; directing Defendants to fully fund A.C.'s placement as pendency for the 2023-2024 school year; awarding Plaintiff statutory costs and reasonable attorneys' fees in the

instant federal action; and granting such other, further, and different relief as the Court may deem just, proper, and equitable.

## STATEMENT OF FACTS

On October 6, 2023, Impartial Hearing Officer ("IHO") Michele Host determined that DOE had failed to offer A.C. a FAPE for the 2022-2023 school year. IHO Host also found that iBRAIN was an appropriate unilateral placement and ordered DOE to fully reimburse Plaintiff for A.C.'s tuition, transportation, and private nursing at iBRAIN for the 2022-2023 ESY. While Plaintiff welcomed this decision, it should have been made months before. Indeed, Plaintiff's initial DPC for the 2022-2023 ESY was filed on February 24, 2022, with an amended DPC filed on April 7, 2022. Under N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5), the IHO must render a decision within 45 days of the request for a hearing, which follows a mandatory 30-day resolution period from the date of the filing of the DPC. Thus, the IHO should have rendered her decision by May 8, 2022 (75 days from the initial DPC) or June 23, 2022 (75 days from the amended DPC). But in this action, IHO Host issued her decision on October 6, 2023, **182** days after the amended due process complaint was filed and **226** days after the original due process complaint was filed, far exceeding the 45-day statutory limit.

At the time of IHO Host's FOFD, A.C. was a ten-year-old boy with severe impairments, including cerebral palsy, hypotonia, delay in development, and chronic respiratory disease. ECF No. 1-1, pg. 9. A.C. is non-verbal and uses a wheelchair. *Id.* A.C. has limited ability to control his arm and leg movements, and also has limited ability to maintain head and trunk postures. *Id.* A.C. requires assistance from an adult for all activities of daily living, including toileting, dressing, and feeding (using a tube). *Id.* As a result, A.C. has highly intensive management needs, requiring a high degree of individualized attention and intervention throughout the day.

Because A.C. is a child with a disability who lives within New York City, the New York DOE is required to convene a Committee of Special Education every year to develop an IEP tailored to A.C.'s educational goals. On December 21, 2021, DOE convened a CSE and held an IEP meeting for the Student's 2021-2022 school year. *Id.* At the time of the IEP meeting, A.C. attended a District 75 public school. *Id.* The IEP recommended that the Student be placed in a 12:1+(3:1) special class in a DOE specialized school on a 12-month basis. *Id.* A.C. attended such a school for the 2021-2022 school year.

A.C. did not receive an IEP for the 2022-2023 school year. *Id.* at 10. On September 2, 2022, Plaintiffs, through counsel, sent a ten-day notice letter to the DOE informing DOE of her intent to place A.C. at iBRAIN because DOE failed to offer A.C. a FAPE for the 2022-2023 ESY. *Id.* at 11. A.C. enrolled at iBRAIN on September 19, 2022. *Id.*

Plaintiff filed a DPC alleging that DOE failed to provide A.C. with a FAPE for the 2021 2022 and 2022-2023 ESYs on or about February 24, 2023. ECF 1-1, pg. 4. Plaintiffs then filed an amended DPC on April 7, 2023. *Id.* Plaintiff sought direct payment of A.C.'s 2022-2023 tuition at iBRAIN, where A.C. had been unilaterally placed for the 2022-2023 school year, in addition to the costs of related services, 1:1 private duty nursing services, and a 1:1 paraprofessional; direct payment of special education transportation; compensatory education to put A.C. in the place he would have been in if he had received an appropriate education during the 2021-2022 school year; an order directing the DOE to convene an IEP meeting for A.C.; an order directing the DOE to fund an independent neuropsychological evaluation; and, if the matter proceeding to a hearing, attorneys' fees. *Id.* IHO Host was appointed to oversee the matter on February 27, 2023. *Id.*

A pre-hearing conference was held on March 31, 2023, and a status conference was held on May 23, 2023. *Id.* At the status conference, Plaintiff notified IHO Host that she wished to proceed

immediately to a due process hearing, and DOE stated that they had a subpoena for documents. *Id.* at 4-5. IHO Host notified counsel for DOE that she had not received the subpoena and asked counsel for DOE to resubmit same. *Id.* at 5. IHO Host scheduled the due process hearing for June 20 and a subpoena hearing for June 5. *Id.*

By May 30, IHO Host had not yet received DOE's subpoena and e-mailed all parties to inform them. *Id.* DOE counsel responded and stated that she would send the subpoenas that day. *Id.* By the date of the subpoena hearing counsel for DOE still had not sent the subpoena to IHO Host for review. *Id.* Instead, counsel for DOE emailed IHO Host and counsel for Plaintiff to request a "brief adjournment" because "she was at the emergency room." *Id.* DOE finally sent the subpoena on June 8 after allegedly sending the subpoena to the incorrect email address on June 7. *Id.* The due process hearing was rescheduled for June 29. *Id.* On that morning, counsel for DOE emailed all parties to request an adjournment because of a death in the family. *Id.* All parties agreed, and the hearing was rescheduled to July 25, 2023. *Id.* The July 25 hearing had to be rescheduled to August 10 and 28 because it conflicted with a personal matter of Plaintiff. *Id.*

On August 10, DOE counsel once again tried to adjourn the hearing because of witness unavailability. *Id.* at 6. Plaintiff's counsel objected and IHO Host denied the request. The hearing commenced, exhibits were presented, opening statements were made, and DOE rested. *Id.* The matter was adjourned to August 28. *Id.* On that date, DOE once again tried to adjourn the hearing because counsel for DOE had a "medical emergency." *Id.* IHO Host directed another DOE attorney to appear. *Id.* At the commencement of proceedings that day, the DOE attorney who did appear once again asked for an adjournment. *Id.* at 6-7. IHO Host denied the request in part; IHO Host required the DOE attorney to cross-examine the parent, but then adjourned the matter to September

7. *Id.* at 7. Additional testimony was taken on September 22, and the record was closed on October 5. *Id.* at 8. IHO Host issued her FOFD on October 6, 2023, the very next day.

In her FOFD, IHO Host found that DOE had failed to offer A.C. a FAPE for the 2021-2022 and 2022-2023 ESYs. *Id.* at 19. IHO Host also found that iBRAIN was an appropriate unilateral placement and that the equitable factors favored reimbursement. *Id.* at 23, 25-26. IHO Host also ordered reimbursement for the specialized transportation that A.C. required from his home to iBRAIN every day and the 1:1 private nursing services A.C. required while at school. *Id.* at 32. IHO Host's October 6 FOFD was never appealed and is thus final and binding on both DOE and Plaintiffs. It also provides the basis for A.C.'s pendency placement for A.C.'s 2023-2024 ESY.

While the administrative process for the 2021-2022 and 2022-2023 ESYs was proceeding, DOE convened a CSE for the 2023-2024 ESY on June 6, 2023. *See* Declaration of Ataur Raquib, ECF No. 9, pg. 4. Plaintiff sent a ten-day notice to DOE notifying DOE of their intent to re-enroll A.C. at iBRAIN on June 20, 2023. *Id.*, pg. 5. DOE created an IEP for A.C. and sent the IEP to Plaintiff on June 26, 2023. *Id.*, pg. 4. However, DOE failed to provide Plaintiff with a prior written notice or school location letter. *Id.*, pg. 5. Further, the IEP recommended material changes in the level of A.C.'s services from that which he had been receiving at iBRAIN, including changing the composition of his class size from 6:1:1 (six students, one teacher, and one paraprofessional) to 12:1+(3:1) (twelve students, 1 teacher, and additional staff such that the student to staff ratio is 3:1), removing music therapy, and removing parent counseling. *Id.* at 4-6. This was a proposed change in placement that triggered A.C.'s pendency rights.

## LEGAL STANDARD

### A. Dismissal under 12(b)(1)

The Court must dismiss a case under Fed. R. Civ. P. 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). On a facial challenge, the defendant contests the adequacy of the allegations in the pleading. *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624 (4th Cir. 2016). On a substantive or factual challenge, the defendant disputes the factual merits of the asserted federal jurisdiction. *Edison v. United States*, 822 F.3d 510 (9th Cir. 2016). On a facial challenge, the plaintiff only faces a pleading burden not an evidentiary one. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016). In a substantive or factual challenge, the Court may receive and consider extrinsic evidence. The plaintiff only must satisfy the burden of preponderance of the evidence, which is generally not a heavy one. *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502 (5th Cir. 2015); *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256 (11th Cir. 1997).

### B. Dismissal under 12(b)(6)

A 12(b)(6) motion to dismiss is a pretrial motion that is granted when a complaint fails to allege sufficient facts to support a cognizable legal claim. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 203 (5th Cir. 2016). It is a facial challenge, and dismissal will only be granted when the facts alleged, if assumed to be true, do not state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Facts must be sufficient to allege a cognizable legal claim. *Id.* The Court simply must perform a two-step analysis in which the facts are isolated and taken as true, then examined for plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

### C. Pendency Under IDEA

"To begin the tuition-reimbursement process, a parent must file a 'due-process complaint' or 'DPC,' which triggers an administrative-review process. *See M.W. ex rel. S.W. v. New York City*

*Dep't of Educ.*, 725 F.3d 131, 135 (2d Cir. 2013) (citing 20 U.S.C. § 1415(b)(6), (f); N.Y. Educ. Law § 4404(1) (McKinney))." *Davis v. Banks*, 2023 U.S. Dist. LEXIS 160092, at *4 (S.D.N.Y. Sep. 11, 2023). "The IDEA requires the state to maintain the educational status quo while the parties' dispute is being resolved." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015) (internal citation and quotation marks omitted); accord *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 525 (2d Cir. 2020).

> Once Plaintiffs triggered the IDEA's pendency provision with their administrative filing on that date, M.C. "was entitled to remain in his . . . placement at public expense during the pendency" of the First 2020-21 Proceedings. *Ventura de Paulino*, 959 F.3d at 531. Since his placement on that date was at Cooke, he was entitled to remain at Cooke, at public expense, during the pendency of the First 2020-21 Proceedings, which as discussed continued at least through December 8, 2020.

*S.H.W. v. N.Y.C. Dep't of Educ.*, 2023 U.S. Dist. LEXIS 57021, at *26-27 (S.D.N.Y. Mar. 31, 2023).

## ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE NOT MOOT

Defendants incorrectly claim that Plaintiff's claims are moot and that the Court lacks jurisdiction over this case. Defendants neglect to address whether they are making a "facial" or "substantive/factual" 12(b)(1) challenge. In either instance, Defendant's challenges fail.

On a facial challenge, the defendant contests the adequacy of the allegations in the pleading. *24th Senatorial Dist. Republican Committee*, 820 F.3d 624. On a substantive or factual challenge, the defendant disputes the factual merits of the asserted federal jurisdiction. *Edison*, 822 F.3d 510. Here, on a facial challenge, the Plaintiff only faces a pleading burden not an evidentiary one. *Carter*, 822 F.3d 47. The Court may receive and consider extrinsic evidence in a substantive or factual challenge. The Plaintiff's burden of proof is a preponderance of the evidence, which is

typically not a difficult standard to meet. *Superior MRI Services, Inc.*, 778 F.3d 502; *Garcia*, 104 F.3d 1256.

Plaintiff’s claims are not moot because, contrary to Defendants' assertions, they have not fully funded A.C.'s 2023-2024 placement. The following amounts are outstanding and unpaid: Tuition: $232,054.19; Transportation: $111,180.00; and Nursing: $195,037.14. Defendants do not dispute that iBRAIN is A.C.'s pendency placement for the 2023-2024 school year, and that they must fully fund that placement. Their only argument here is that Plaintiff’s claims are moot because they fully funded the 2023-2024 school year. Because this argument is erroneous, their Motion to Dismiss must fail.

Plaintiff is entitled to payment from the beginning of the school year, which Defendants dispute. The above amounts reflect the amount owed for the entire school year. Defendants cite *Doe*, 790 F.3d 440, for the proposition that they are only obligated to pay pendency from the date of the filing of the DPC. However, Defendants misapply *Doe*. The Court in *Doe* held that "the Board's obligation to provide stay-put services was not triggered until the Parent's administrative complaint was filed." *Id.* at 456. While the obligation to provide stay-put services may be triggered by the DPC, it does not define the scope of the obligation or when amounts owed for stay-put services begin to accrue.

The purpose of the stay-put provision is to ensure that the student stays put in his current placement, at public expense. Here, A.C. has attended iBRAIN from the first day of the 2023-2024 school year. The amounts owed for this placement began accruing from that first day, while the DOE’s procedural obligation to pay was only triggered upon the DPC filing. DOE’s obligation to fund that placement was not triggered until the filing of the DPC, but the amounts owed had already begun. It was the *obligation* to pay, in an amount covering the entire school year, that was not

triggered until March 1, the date the DPC was filed. It does not make sense to cut out funding of part of the student's pendency placement because the DPC was not filed on exactly that date or prior. A.C. has been provided educational services at his stay-put placement, iBRAIN, since the beginning of the school year, and while DOE makes a hypertechnical argument that they do not have to fund any services that were provided at the stay-put placement before the DPC is filed, that argument flies in the face of the purpose and spirit of the stay-put provision.[1]

Should this Court disagree with the above argument, Plaintiff argues alternatively that she is entitled to payment of all amounts owed, as pendency, from the date of the filing of the DPC, which was March 1, 2024, until June 30, 2024, the end of the school year. While DOE apparently does not dispute this argument, it has nonetheless, and inexplicably, not fully funded A.C.'s placement at iBRAIN from March 1 to June 30.

Even if DOE had made all payments owed, Plaintiff's claims would not be moot. The Supreme Court has long held that voluntary cessation of challenged practices does not moot a case unless the defendant demonstrates "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citing *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). Here, Plaintiff faces an ongoing threat that delayed payments and funding interruptions will persist without court intervention, as evidenced by DOE's well-documented pattern of payment delays.

Moreover, the mootness doctrine has an exception for cases that are "capable of repetition, yet evading review." *Honig v. Doe*, 484 U.S. 305, 318–19 (1988). This doctrine applies when (1) the duration of the challenged action is too short to be fully litigated before it ceases, and (2) there

---

[1] Plaintiff provides additional argument on this point below, in support of her Motion for Summary Judgment.

is a reasonable expectation that the same action will recur. Here, as set forth below, DOE has a long, documented history of delaying payments owed to special education families. Historically, DOE often continues to delay, or fail to pay, until the parents file a lawsuit in federal Court. Then, they argue that the case is moot because they have paid. In this way, without court intervention, DOE will continue to abdicate its responsibility to fund its obligations to special education families because, once an action is filed challenging DOE's pattern, it simply pays before the case can be adjudicated. This is precisely the situation to which the "capable of repetition yet evading review" exception applies.

The "capable of repetition, yet evading review" doctrine is particularly relevant to cases involving IDEA violations, where temporary delays repeatedly threaten students' educational stability. Just because the as-soon-as-possible-requirement is flexible does not mean it lacks a breaking point. *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503 (2d Cir. 2006), *opinion amended on denial of reh'g,* 480 F.3d 138 (2d Cir. 2007). Courts have ruled that failure to provide timely services can be legally considered a denial of those services if the delay prevents the individual from benefiting from them. *Petties v. D.C.*, 881 F. Supp. 63, 66 (D.D.C. 1995).

DOE's delay tactics present a clear example of conduct that, although partially remedied in response to litigation, has historically returned once the Court's oversight ends. As in *Petties*, DOE's practices have not demonstrated sustainable change and instead continue in a "piecemeal" fashion, making repeated judicial intervention necessary. Without the relief sought in this action, Plaintiff has a "reasonable expectation" of future harm, ensuring the case's justiciability under established precedent.

Furthermore, Defendants argue that all causes of action in this case are moot; however, Plaintiffs' claim for attorneys' fees as the prevailing parties in IHO Case No. 246205 remains a live

issue and is not rendered moot by the DOE's belated compliance. Plaintiffs' Complaint requests attorneys' fees for the 2022-2023 school year as prevailing parties, specifically seeking "an award of reasonable attorneys' fees under 20 U.S.C. § 1415(i)(3)(B)(I)" [ECF No. 36, p. 12, ¶ 94]. The DOE did not begin implementation of the FOFD under 246205 until after this action was filed, despite the Plaintiff's entitlement to relief under the IDEA.

Under 20 U.S.C. § 1415(i)(3)(B)(i)(I), courts may award reasonable attorneys' fees to prevailing parties in IDEA cases, and the Second Circuit has affirmed that this right to attorneys' fees extends to representation in administrative hearings before IHOs, appeals to the SRO, and federal district court actions. See *G.M. ex rel. R.F. v. New Britain Bd. of Educ.*, 173 F.3d 77, 84 (2d Cir. 1999). Further, as clarified in *A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 75, 83 (2d Cir. 2005), prevailing parties are also eligible for fees incurred in preparing and filing the fee application itself. These authorities underscore that Plaintiffs' claim for attorneys' fees persists regardless of the DOE's later actions and remains actionable.

The generous interpretation of "prevailing party" status in the IDEA context, as established by this Circuit, further supports Plaintiffs' right to attorneys' fees here. In *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 427 (S.D.N.Y. 2011), *aff'd sub nom. E.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist.*, 487 F. App'x 619 (2d Cir. 2012), and *Mrs. M. ex rel. her daughter "T" v. Tri-Valley Cent. Sch. Dist.*, 363 F. Supp. 2d 566, 569 (S.D.N.Y. 2002), the courts affirm that even nominal victories are sufficient to confer prevailing party status. Thus, Plaintiffs' pursuit of reasonable attorneys' fees for their success in enforcing the FOFD implementation remains active and is not mooted by Defendants' recent compliance.

## II. <u>PLAINTIFF HAS STATED A CLAIM UNDER § 1983</u>

Defendants argue that Plaintiff's § 1983 claim should be dismissed under Rule 12(b)(6) for failure to state a claim. This argument constitutes a facial challenge, and dismissal will only be granted when the facts alleged, if assumed to be true, do not state a claim for relief that is "plausible on its face." *Bell Atlantic Corp.*, 550 U.S. 544. Facts must be sufficient to allege a cognizable legal claim. *Id.* The Court simply must perform a two-step analysis in which the facts are isolated and taken as true, then examined for plausibility. *Ashcroft*, 556 U.S. 662.

Courts in this circuit recognize § 1983 claims as a mechanism for giving federal courts jurisdiction to enforce administrative orders. IHOs and SROs have no authority to enforce their own orders. Thus, for aggrieved parents to be able to obtain any relief, federal courts must have authority to enforce such orders when DOE is delinquent in implementing them. This is achieved by filing a § 1983 claim. Courts routinely acknowledge jurisdiction under § 1983 to address challenges to administrative orders and to DOE's failure to implement such orders. Further, DOE asserts:

> Plaintiffs can establish a municipal policy in four ways: "(1) a formal policy endorsed by the municipality; (2) actions directed by the government's authorized decisionmakers or those who establish governmental policy; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees." *Deferio v. City of Syracuse*, 770 Fed. App'x 587, 589–90 (2d Cir. 2019) (internal quotations and citations omitted).

[ECF No. 46 at 11]. Plaintiff can satisfy at least three of these standards.

In cases involving unpaid amounts owed by DOE, DOE's typical approach is to claim that it acknowledges that it owes the payments, but that it will get to them in its "ordinary course of business." *See, e.g.*, *Thomas, et al. v. Banks et al.*, Case 1:24-cv-05138-JLR, ECF No. 55 at 15 (S.D.N.Y. Nov. 4, 2024). This clearly is a policy pursuant to which, as demonstrated by its long history, DOE makes payments when it gets around to it, which may be months, or even years from

the date they become due. This is a municipal policy under the first prong. Second, delayed payments are made at the direction of DOE's authorized decisionmakers. This satisfies the second prong.

Further, DOE has a long history of failing to implement FOFDs and failing to pay in accordance with orders in a timely fashion. *See, e.g.*, *L.V. v. N.Y.C. Dep't of Educ.*, 2005 U.S. Dist. LEXIS 20672 (S.D.N.Y. Sep. 15, 2005). *L.V.* is a class-action case that has been ongoing for nearly two decades. It is well-known that DOE has become notorious for delaying the payment of amounts owed to special education families under the IDEA. This is a "persistent and widespread practice that amounts to a custom" sufficient to confer municipal liability.

## III. SUMMARY JUDGMENT FOR PLAINTIFF SHOULD BE GRANTED

### A. Summary Judgment Standard

A motion for summary judgment requires the Court to view the undisputed facts in the light most favorable to the non-moving party. *Schwebel v. Crandall*, 967 F.3d 96, 102 (2d Cir. 2020). The Court may grant summary judgment where a reasonable jury could not render a verdict on behalf of the non-moving party. *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). However, summary judgment under the IDEA is slightly different. A motion for summary judgment under the IDEA authorizes the Court to perform a general review of the underlying administrative proceedings. *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("The court's inquiry is a results-based standard in many respects, concerned more with a just outcome for a disabled student than with judicial efficiency."). However, the Court must give deference to IHO and SRO decisions on "difficult and persistent questions of educational policy," *A.C. ex rel. M.C. v. Bd. of Educ. of The Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009), except where the administrative decisions are **poorly reasoned** or relate to purely legal

questions. *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012) (emphasis added) ("Determinations grounded in thorough and logical reasoning should be provided more deference than decisions that are not."); *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1122 (2d Cir. 1997).

**B. Legal Framework**

"To begin the tuition-reimbursement process, a parent must file a "due-process complaint" or "DPC," which triggers an administrative-review process. *See M.W. ex rel. S.W.*, 725 F.3d at 135 (citing 20 U.S.C. § 1415(b)(6), (f); N.Y. Educ. Law § 4404(1))." *Davis v. Banks*, 2023 U.S. Dist. LEXIS 160092, at *4 (S.D.N.Y. Sep. 11, 2023). "The IDEA requires the state to "maintain the educational status quo while the parties' dispute is being resolved." *Doe*, 790 F.3d at 452 (internal quotation marks omitted); *accord Ventura de Paulino*, 959 F.3d at 525. Specifically, the IDEA's "stay-put" or "pendency" provision states that, "unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement." 20 U.S.C. § 1415(j); *see also* 34 C.F.R. § 300.518. The provision is designed to ensure that the school district "continue[s] funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Doe*, 790 F.3d at 452 (internal quotation marks omitted)." *Davis*, 2023 U.S. Dist. LEXIS 160092, at *5-6.

> Because the 2019-20 FOFD established M.C.'s educational placement at Cooke starting December 31, 2019, his placement was at Cooke as of July 1, 2020, the date of the filing of the First 2020-21 DPC. Once Plaintiffs triggered the IDEA's pendency provision with their administrative filing on that date, M.C. "was entitled to remain in his . . . placement at public expense during the pendency" of the First 2020-21 Proceedings. *Ventura de Paulino*, 959 F.3d at 531. Since his placement on that date was at Cooke, he was entitled to remain at Cooke, at public expense, during the pendency of the First 2020-21 Proceedings, which as discussed continued at least through December 8, 2020. Defendant must therefore reimburse Plaintiffs not merely for the portion of the 2020-21 school year after December 8, 2020, which it does not dispute, but also for the period from July 1, 2020 to December 8, 2020.

*S.H.W. v. N.Y.C. Dep't of Educ.*, 2023 U.S. Dist. LEXIS 57021, at *26-27 (S.D.N.Y. Mar. 31, 2023). Likewise, once Plaintiff made her initial administrative filing, the IDEA's pendency provision was triggered. Therefore, A.C. is entitled to remain in his placement, at public expense, during the pendency of the current proceedings.

**C. Plaintiff is entitled to an automatic injunction under § 1415(j)**

"The [IDEA's] stay-put provision has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy." *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005) (citing *Honig*, 484 U.S. at 326–27; *Rodiriecus L. v. Waukegan Sch. Dist. No. 60*, 90 F.3d 249, 253 (7th Cir. 1996); *John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit*, 318 F.3d 545, 556 (3d Cir. 2003)).

As fully set forth above, IHO Host established iBRAIN as A.C.'s placement for the 2022-2023 ESY. Accordingly, A.C.'s pendency placement for his 2023-2024 IEP dispute has been established through his 2022-2023 FOFD. *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014); *Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir.), *supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004); *Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 325 (S.D.N.Y. 2005). Further, DOE does not dispute that iBRAIN is A.C.'s pendency placement for the 2023-2024 school year. However, as set forth above, Defendants have, to date, failed to fully fund A.C.'s placement at iBRAIN for the 2023-2024 school year. Accordingly, Plaintiff is entitled to summary judgment.

**D. Plaintiff is entitled to Pendency payments commencing at the start of the 2023-2024 extended school year**

At the conclusion of the dispute over A.C.'s IEP for the 2022-2023 ESY, IHO Host found that DOE failed to provide A.C. a FAPE for the 2022-2023 ESY, that iBRAIN was an acceptable unilateral placement for A.C., and that the balance of equities favored Plaintiffs. ECF No. 1-1, pg. 32. A.C. was therefore granted reimbursement for full tuition and related services at iBRAIN for the 2022-2023 ESY. *Id.* Thus, iBRAIN is the last agreed-upon placement for A.C.

Accordingly, under the IDEA's "stay put" provision, 20 U.S.C. § 1415(j), A.C. was entitled to remain at iBRAIN at the public expense during the pendency of the dispute over his 2023-2024 IEP. In other words, the entering of an order on pendency is a mere formality; that iBRAIN is A.C.'s pendency placement for the duration of the dispute over A.C.'s IEP for the 2023-2024 ESY is indisputable. *See M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 123–24 (3d Cir. 2014); *Doe*, 790 F.3d at 452.

In most cases, a school district's obligation to fund a child's pendency placement occurs when an IHO enters an Interim Order on Pendency following a family's filing of a DPC. However, such an order is not necessary for pendency obligations to arise. Rather, "the IDEA's stay-put provision is triggered when a change in placement is proposed; 'a fundamental change in, or *elimination of, a basic element of the educational program*' constitutes a change in placement." *Spilsbury v. D.C.*, 307 F. Supp. 2d 22, 27 (D.D.C. 2004) (emphasis in original) (quoting *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984)).[2]

A school district is obligated to create an IEP for each applicable student every year. While the school district may change the level of services it offers to a student from year to year, deviating

[2] Further, an aggrieved family need not seek a pendency order through the administrative process and may instead enforce their pendency rights via injunctive order from a federal court. *Spilsbury*, 307 F. Supp. 2d at n.1 (noting that plaintiffs "sought, and won, injunctive relief from this Court in the form of IDEA "stay-put" protection); *see also C.P. v. Kankakee Cmty. Unit Sch. Dist. & Ill. State Bd. of Educ.*, 2005 U.S. Dist. LEXIS 56437, *7-*8 (C.D. Ill. 2005) (noting that because there is no exhaustion of administrative remedies requirement to 20 U.S.C. § 1415(j), a federal court has jurisdiction to issue a "stay put" or "pendency" order pending the outcome of the due process hearing).

from a student's agreed-upon services is sufficient to trigger the "stay-put" provision of the IDEA and a student's pendency rights while the family and the school district resolve the dispute over the change in the level of services. *Spilsbury*, 307 F. Supp. 2d at 27 ("To comply with the IDEA, [a school district] must ensure that the students retain both their current placements and their current level of services while the proposed change is litigated, as 'stay-put' obviously does not mean providing some of the same services, but declining others, at [the district's] unilateral discretion."). For example, in applying the approach from *Lunceford*, the *Spilsbury* court found that the removal of a student's academic tutoring and mental health care from that student's IEP was a sufficient change to trigger the IDEA's stay-put provision such that the student's parents could obtain an injunction enforcing their child's pendency rights in federal Court. *Id.* at 27–28. Under *Lunceford*, other courts have found the stay-put provision to be triggered when a school district recommends a significant change in class structure. *See Henry v. Sch. Admin. Unit No. 29*, 70 F. Supp. 2d 52 (D.N.H. 1999) (finding pendency to be triggered when the school district recommended classes with eighteen other students for a student who was then currently receiving instruction in a 1:3 or 1:4 group setting).

In this action, DOE created an IEP for A.C. for the 2023-2024 ESY (the "2023-2024 DOE IEP") on June 26, 2023. The 2023-2024 DOE IEP for A.C. transfers A.C. from a 6:1:1 classroom (6 students, 1 teacher, 1 paraprofessional), to a 12:1+(3:1) classroom (12 students, 1 teacher, and additional staff members such that the ratio of students to staff is 3 to 1). In other words, A.C. was to go from a classroom with 5 other students to a classroom with 11 other students. These classroom settings are intended for students with different needs, and moving a student from one type of class setting to another represents a change in service. *See* N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6 (h)(4). In addition, the 2023-2024 DOE IEP removes A.C.'s thrice weekly music

therapy (referred to in the DPC as MT) and monthly parent counseling (referred to in the DPC as PCT). Because the 2023-2024 DOE IEP materially changed the level of service that A.C. was receiving at the time, the creation of the 2023-2024 DOE IEP triggered A.C.'s pendency rights and DOE's obligation to fund A.C.'s pendency placement at iBRAIN for the duration of the dispute over A.C.'s 2023-2024 DOE IEP.

At the time that Plaintiff received the 2023-2024 DOE IEP, however, she was unable to file a request for an Interim Order on Pendency because A.C. had no current pendency placement. A student's pendency placement is based on the last agreed-upon IEP for that child[3] – but here, Plaintiff was waiting for IHO Host to render her decision on whether iBRAIN was an appropriate placement for A.C. for the prior 2022-2023 ESY. There was no DOE IEP for the 2022-2023 ESY – DOE had failed to provide one – so Plaintiff could not rely on the prior year's IEP to claim pendency. Even though A.C. had attended a public school for the 2021-2022 ESY, it would undermine the entire point of the IDEA's stay-put provision for A.C. to unenroll at iBRAIN and then enroll at a new school. Plaintiff therefore had no choice but to start the new school year at iBRAIN and wait until IHO Host issued her decision to claim pendency. Had IHO Host been able to render a timely decision 75 days after Plaintiff's amended DPC, by the end of June 2023, Plaintiff would have had an FOFD on which to base her claim for pendency for the 2023-2024 ESY. But because of DOE's numerous delays and requests for adjournments, and because of the length of time it took IHO Host to render her decision once the hearing concluded, Plaintiff did

---

[3] *See Mackey ex rel. Thomas M.*, 386 F.3d at 163 ("Although the IDEA does not define, and our Circuit has not previously considered the meaning of, the term 'then-current educational placement,' our sister circuits have interpreted the term to mean: (1) 'typically the placement described in the child's most recently implemented IEP,' *Johnson ex rel. Johnson v. Special Educ. Hearing Off., State of Cal.*, 287 F.3d 1176, 1180 (9th Cir. 2002); (2) 'the operative placement actually functioning at the time . . . when the stay put provision of the IDEA was invoked,' *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir. 1996); and (3) '[the placement at the time of] the previously implemented IEP,' *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625 (6th Cir. 1990).").

not have her decision until October 6, 2023, 182 days after she filed her amended DPC on April 7, 2022, and 226 days after she filed her original DPC on February 23, 2022.

In *Mackey ex rel. Thomas M.*, 386 F.3d 158, the Second Circuit addressed an analogous situation in which an SRO rendered a decision establishing a private school as the student's placement for the 1999-2000 school year, but not until November 2001, five months after the school year in question had ended. *Mackey ex rel. Thomas M.*, 386 F.3d at 163–164. When the parents sought pendency payments for the private school for the 2000-2001 school year, the school district argued that the Parents were not entitled to pendency payments because the private school was not the student's proper placement at the time the student enrolled there. *Id.* at 164. The Second Circuit disagreed:

> We think such an outcome, if permitted to stand, is unfair to the parents. If the SRO had issued its order within thirty days of the District's November 9, 2000 receipt of the parents' request for review of the IHO's decision, Maplebrook would have been found to be T.M.'s pendency placement from December 9, 2000, forward, and the parents would, without question, have been entitled to tuition reimbursement on a pendency basis for at least part of the 2000–2001 school year. **Only because the SRO was derelict, through no fault of the parents** . . . , the reimbursement to which they would otherwise have been entitled from the District disappeared. The District, by the district court's decision, was allowed to escape the financial consequences of pendency placement for which the District otherwise would have been responsible.

*Mackey ex rel. Thomas M.*, 386 F.3d at 164–165 (emphasis added). The Court held that the SRO decision should be applied retroactively, entitling the Parents to pendency payments. *Id.* at 165.

The same is true here. Had DOE not unreasonably delayed the proceedings and had IHO Host been able to timely issue her decision by the end of June 2023, Parent herein would have been entitled to pendency payments for the 2023-2024 school year. Instead, IHO Host was not able to render her decision regarding the 2022-2023 ESY on October 6, 2023 – after the end of the relevant school year, just as the SRO in *Mackey* did. It was only because DOE continually

adjourned the matter through no fault of the Parent, that the "reimbursement to which [she] would otherwise have been entitled" will disappear. *Id.* This Court should follow the lead of the Second Circuit and refuse to allow this unjust outcome.

Most notably from the Southern District of New York, Judge John P. Cronan recently followed *Mackey* to find that pendency payments had to commence on the date that the prior year's late FOFD should have been issued, not when the FOFD was actually issued. In *S.H.W.*, 2023 U.S. Dist. LEXIS 57021, the student's 2019-2020 FOFD was issued in September 2020, well after the regulatory deadline. The family sought pendency payments for the 2020-2021 ESY retroactive to July 2020, when the FOFD *should have* been issued. Following *Mackey*, Judge Cronan agreed with the family and ordered pendency payments retroactive to July 2020. *Id.* at * 26-*27.

In light of the above, Plaintiff is entitled to pendency funding commencing at the start of the 2023-2024 extended school year, and it is evident that A.C. must continue his education at iBRAIN. The Court should mandate the DOE to fulfill its obligation by funding A.C.'s placement at iBRAIN for the duration of this dispute. This action would honor the principles upheld by the Second Circuit in *Mackey* and reaffirmed in *S.H.W.*, ensuring that A.C. and his family do not suffer an unjust outcome.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety, and grant Plaintiff's Motion for Summary Judgment. Plaintiff additionally requests reasonable attorneys' fees and costs associated with this action, and any further relief the Court deems just and appropriate.

Dated: November 13, 2024
New York, New York

Respectfully submitted,

Brain Injury Rights Group, Ltd.
*Attorneys for Plaintiffs*

By: ____***/S/***______________________

Rory J. Bellantoni (RB2901)
300 E. 95 Street, Suite 130
New York, NY 10128
(646) 850-5035
rory@pabilaw.org