UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
**SHANTEL TALLEY,** as Parent and Natural Guardian
of A.C. and SHANTEL TALLEY, Individually,

                         *Plaintiffs,*

        -against-                                   **24-cv- 2094 (JHR)**

**DAVID C. BANKS**, in his official capacity as
Chancellor of the New York City Department of
Education, and the **NEW YORK CITY
DEPARMENT OF EDUCATION**,

                         *Defendants.*
-------------------------------------------------------------------X


**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF PLAINTIFFS' CROSS-MOTION
<u>FOR SUMMARY JUDGMENT</u>**




Rory J. Bellantoni, Esq. (RB2901)
Brain Injury Rights Group, Ltd.
*Attorneys for Plaintiff*
300 East 95th, Suite 130
New York, New York 10128
Rory@pabilaw.org

**TABLE OF CONTENTS**

*Page(s)*

**TABLE OF AUTHORITIES**……………………………………………………………………..i

**PRELIMINARY STATEMENT** …………………………………………………..……1

**ARGUMENT** ……………………………………………………………………...…………..2

    **I.**    **THE IDEA'S STAY-PUT PROVISION MANDATES CONTINUITY**…………..…2

    **II.**    **DEFENDANT'S MISCHARACTERIZATION OF *DOE V. E. LYME* AND THE DOE'S FAILURE TO MEET PENDENCY OBLIGATIONS** …………..…...4

        **A.** The Defendant's Obligation to Fund the Established Placement under 20 U.S.C. 1415(j) …………………………………………………………………...4

        In the Alternative, the DOE is Obligated to Fund A.C.'s Placement due to procedural violates...……………………………………………………………... 8

**CONCLUSION** ……………………………………………………………………………...10

# TABLE OF AUTHORITIES

**Federal Cases**                                                                     **Page(s)**

*D.M. v. N.J. Dep't of Educ.*,
   801 F.3d 205 (3d Cir. 2015) ...................................................................................3

*Davis v. District of Columbia*,
   80 F.4th 321 (D.C. Cir. 2023) ..................................................................................3

*Doe v. E. Lyme Bd. of Educ.*,
   962 F.3d 649 (2d Cir. 2020) .....................................................................................5

*Doe v. E. Lyme Bd. of Educ.*
   790 F.3d 440 (2d Cir. 2015) ............................................................................. *passim*

*Honig v. Doe*,
   484 U.S. 305 (1988) ..........................................................................................2, 3, 6

*L.R.L. v. District of Columbia*,
   896 F. Supp. 2d 69 (D.D.C. 2012) .........................................................................1, 2

*Mackey*,
   386 F.3d ....................................................................................................................7

*Murphy v. Arlington Cent. Sch. Dist.*,
   86 F. Supp. 2d 354 (S.D.N.Y. 2000) ........................................................................7

*R.S. v. Somerville Bd. of Educ.*, Civil No. 10-4215
   (MLC), 2011 U.S. Dist. LEXIS 748 at 33, 2011 WL 32521 (D.N.J. Jan. 5, 2011) ......7

*S.H.W. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 4808
   (JPC), 2023 U.S. Dist. LEXIS 57021 (S.D.N.Y. Mar. 31, 2023) ..............................9

*Schutz v. City of N.Y.*,
   290 F.3d 476 (2d Cir. 2002) .....................................................................................7

*T.M. v. Cornwall Sch. Dist.*,
   752 F.3d 145 (2d Cir. 2014) ..................................................................................7, 8

*Zvi D. v. Ambach*,
   694 F.2d 904 (2d Cir. 1982) .................................................................................. 6, 7

**Federal Statutes**

§ 1415 ............................................................................................................................... *passim*

20 U.S.C. § 1415 ............................................................................................................ *passim*

**State Statutes**

N.Y. Educ. Law § 4404 ..........................................................................................................6

**Other**

34 C.F.R. § 300.518 ................................................................................................................6

N.Y. Comp. Codes R. Regs. tit. 8, § 200.5(j)(5) ………………………………….................9

**PRELIMINARY STATEMENT**

This Reply Memorandum of Law is submitted in opposition to Defendants' Motion to Dismiss and in support of Plaintiffs' Cross Motion for Summary Judgment. Plaintiffs seek enforcement of their rights under the Individuals with Disabilities Education Act ("IDEA"), specifically the "stay-put" provision in 20 U.S.C. § 1415(j), which ensures continuity and stability in the educational placement of children with disabilities during disputes.

Defendants' narrow interpretation of their pendency obligations, limiting funding to post-Due Process Complaint ("DPC") periods, undermines the IDEA's purpose and ignores the binding authority of the unappealed October 6, 2023, Findings of Fact and Decision ("FOFD") issued by IHO Michele Host. This FOFD confirmed iBRAIN as A.C.'s pendency placement and required Defendants to fully fund tuition, transportation, and private nursing services for the 2022–2023 school year, which extends to the 2023–2024 school year under their pendency obligations. By selectively complying, Defendants disrupt A.C.'s educational stability and violate the IDEA's protections.

Defendants' reliance on *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440 (2d Cir. 2015), misapplies its holding, which emphasizes maintaining the educational status quo and uninterrupted services during disputes. Persuasive authority, including *L.R.L. v. District of Columbia*, 896 F. Supp. 2d 69 (D.D.C. 2012), supports Plaintiffs' position that pendency obligations extend from the beginning of the school year until the due process proceedings have ended unless explicitly altered by due process decisions or mutual agreement. Furthermore, Defendants' mootness argument fails, as Plaintiffs have not received retroactive funding for the 2023–2024 school year or resolution of their claim for attorneys' fees. Accordingly, Plaintiffs respectfully request that the

Court deny Defendants' Motion to Dismiss, grant Plaintiffs' Cross Motion for Summary Judgment, and compel Defendants to fully satisfy their pendency obligations.

I. **THE IDEA'S STAY-PUT PROVISION MANDATES CONTINUITY**

The IDEA's stay-put provision, 20 U.S.C. § 1415(j), states that "the child shall remain in the then-current educational placement" during the pendency of administrative or judicial proceedings, unless the parents' consent to an alternative placement. This provision protects students from disruptions by ensuring stability in their educational programs throughout disputes. As the Supreme Court has emphasized, the stay-put provision aims to "prevent school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings." *Honig v. Doe*, 484 U.S. 305, 327 (1988).

The stay-put provision is not a tool for limiting funding obligations but a safeguard to maintain the "status quo" for students with disabilities. This provision operates as a *shield* to protect students, ensuring they are not excluded from their current placement without proper procedures. *L.R.L.*, 896 F. Supp. 2d at 79. The Court in *L.R.L.* found:

> [T]he defendant's use of the stay-put provision as a sword against a disabled student is ironic since this provision was intended to be a shield for a student whom a school district seeks to exclude without making efforts for appropriate changes to an IEP. See *Honig*, 484 U.S. at 327 (noting that "one of the evils Congress sought to remedy was the unilateral exclusion of disabled children by schools . . . and one of the purposes of [the stay-put provision], therefore, was 'to prevent school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings.'" (quoting *Burlington Sch. Comm. v. Mass. Dep't of Educ.*, 471 U.S. 359, 373, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985))).

*L.R.L.*, 896 F. Supp. 2d at 79

The D.C. Circuit Court has reiterated this same principle and line of thinking, that 20 U.S.C. § 1415(j) of the IDEA serves as a "shield to temporarily block the District from fundamentally changing a student's educational placement" during the pendency of administrative proceedings.

*Davis v. District of Columbia*, 80 F.4th 321, 329 (D.C. Cir. 2023). Again, the stay-put provision is designed to maintain the *status quo* of a child's educational placement and is not intended to be used as a "sword to effectuate affirmative remedies" *Id.* However, Defendants' attempt to transform this statutory shield into a procedural weapon to evade their obligations—specifically, by deploying it as grounds to dismiss this action—is legally untenable. The IDEA was enacted to protect vulnerable children, not to provide the DOE with a convenient escape hatch for shirking its responsibilities. If the DOE's logic were to prevail, it would set a dangerous precedent, effectively turning the stay-put provision into a tool for delay, denial, and dereliction, rather than the safeguard Congress intended.

This argument by the Defendants to narrow the stay-put provision directly contradicts the statute's intent, which prioritizes stability for students with disabilities throughout disputes. Additionally, the Third Circuit has highlighted that the stay-put provision aims to protect individual students while disputes regarding their educational placement are being resolved, ensuring that their educational services are not altered or reduced during this period. *D.M. v. N.J. Dep't of Educ.*, 801 F.3d 205 (3d Cir. 2015). This protective function aligns with the IDEA's broader goal of safeguarding the educational stability of children with disabilities.

Here, the unappealed October 6, 2023, FOFD issued by IHO Michele Host explicitly determined that A.C.'s placement at iBRAIN was appropriate for the 2022-2023 school year. [ECF No. 36-1] The decision ordered the DOE to fully reimburse A.C.'s tuition, transportation, and private nursing at iBRAIN. [ECF No. 36-1]. This determination is binding and established iBRAIN as A.C.'s pendency placement for the 2023-2024 school year.

The DOE has neither prevailed in the due process proceedings necessary to alter A.C.'s placement nor implemented any alternative placement agreed upon by the parties.[1] Accordingly, its pendency obligation extends to the full 2023-2024 school year, including the gap of time beginning at the start of the extended school year in July 2023. Defendants' restrictive interpretation of 20 U.S.C. § 1415(j) not only ignores the October 2023 FOFD but also violates IDEA's intent to maintain stability for students like A.C. during disputes.

## II. DEFENDANTS' MISCHARACTERIZATION OF *DOE V. E. LYME* AND THE DOE'S FAILURE TO MEET PENDENCY OBLIGATIONS

### A. The Defendant's Obligation to Fund the Established Placement Under 20 U.S.C. § 1415(j)

Defendants rely on *Doe v. East Lyme*, 790 F.3d 440 (2d Cir. 2015), to argue that their pendency obligations only commence on the date a DPC is filed. This reading misinterprets both the scope and purpose of *Doe*. The language utilized by the Court in *Doe* does not restrict the obligation to provide funding solely from the moment the DPC is filed. Instead, it clarifies when the obligation is triggered. Specifically, the Second Circuit states:

> The provision governs the obligations of parties during "the pendency of any proceedings conducted pursuant to this section," 20 U.S.C. § 1415(j) (emphases added); and the word "proceeding" is used in 20 U.S.C. § 1415 exclusively to describe administrative due process proceedings and judicial actions, see 20 U.S.C. § 1415(i). This reading of the statute is reinforced by the implementing regulation. 34 C.F.R. § 300.518 ("[D]uring the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing under § 300.507, unless the State or local agency and the parents of the

---

[1] As the Defendants have correctly stated, "Plaintiffs did not prevail at the Impartial Hearing Office ("IHO") or the State Review Office ("SRO"). See Crotty Decl. ECF #47 ¶11. Thus, the only relief they can obtain is via pendency." [ECF No. 51, p. 6]. However, Plaintiffs have four months to appeal the decision of the State Review Officer. N.Y. Educ. Law § 4404 ("Any final determination or order of a state review officer rendered pursuant to subdivision two of this section may only be reviewed in a proceeding brought in the supreme court pursuant to article four of the civil practice law and rules, and paragraph b of this subdivision, or in United States district court. Any such proceeding shall be commenced within four months after the determination to be reviewed becomes final and binding on the parties.") Plaintiffs intend to appeal SRO Decision 24-258, which relates to A.C.'s 2023-2024 school year. Accordingly, pendency remains a critical issue in these proceedings.

4

> child agree otherwise, the child involved in the complaint must remain in his or her current educational placement.").

*Doe*, 790 F.3d at 455.

The Second Circuit's reasoning makes clear that pendency obligations attach during proceedings but does not suggest that the filing of a DPC creates or limits the underlying substantive obligation. Instead, the filing is merely a procedural condition precedent to invoke enforcement. The obligation to continue funding the last agreed-upon placement arises independently from the IDEA's stay-put provision, § 1415(j), which mandates that the child remain in their current placement to avoid disruptions in educational services.

Moreover, the facts of *Doe* are readily distinguishable from the instant matter. In *Doe*, the administrative process proceeded without significant delays or procedural failures. One issue before the Court was whether pendency obligations were triggered at the point of an impasse or when the DPC was filed. *Doe*, 790 F.3d at 455. Critically, the parent in *Doe* did not seek funding to maintain the student's placement for the 2008–2009 school year. Instead, the parent explicitly acknowledged that they agreed to cover the costs for that period. *Id.* at 447 n.1; *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 656 (2d Cir. 2020). The Second Circuit emphasized that the parent "did not assert any stay-put right to [Solomon Schechter] tuition," which fundamentally narrowed the scope of the court's analysis. *Doe II*, 962 F.3d at 656.

By contrast, Plaintiffs here invoke the IDEA's pendency provision to enforce the DOE's statutory obligation to maintain A.C.'s educational placement at iBRAIN from the beginning of the school year as placement was established by the October 6, 2023 FOFD. This FOFD identifies iBRAIN as the last agreed-upon placement under the IDEA, giving rise to an obligation that extends beyond the procedural filing of the DPC to ensure uninterrupted funding for the 2023–2024 school year.

5

One of IDEA's most basic procedural rights is the right to "stay-put," or placement pending appeal, pursuant to 20 U.S.C. § 1415(j). The statute provides that, with an exception not relevant here, "…during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, " 20 U.S.C. § 1415(j); *see also* 34 C.F.R. § 300.518(a). Stay-put functions as an automatic injunction, substituting "an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fairground for litigation and a balance of hardships." *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982). The statutory language is "unequivocal," clearly stating that "'the child shall remain in the then-current educational placement.'" *Honig v. Doe*, 484 U.S. 305, 323 (1988) (emphasis in original). As the Second Circuit has explained:

> [§ 1415(j)] reflects Congress's decision that all disabled children should keep their existing educational program until any dispute over their placement is resolved. It therefore requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete.

*T.M. v. Cornwall Sch. Dist.*, 752 F.3d 145, 170-71 (2d Cir. 2014) (citations omitted).

To do otherwise "'would amount to a unilateral change in placement, prohibited by [IDEA].'" *Mackey*, 386 F.3d at 163 (quoting *Zvi*, 694 F.2d at 906). Stay-put protection may extend for a number of years. "The fact that school years come and go while the litigation is pending, and successive due process petitions may be filed addressing the same dispute in each school year, does not obviate the injunctive effect of the stay put provision." *R.S. v. Somerville Bd. of Educ.*, Civil No. 10-4215 (MLC), 2011 U.S. Dist. LEXIS 748 at 33, 2011 WL 32521 (D.N.J. Jan. 5, 2011) (citing *Burlington*, 471 U.S. at 370).

Furthermore, a parent's success at due process may create stay-put rights where none previously existed, as a favorable administrative decision is considered an agreement by the state to the parent's proposed placement. See, e.g., *Murphy v. Arlington Cent. Sch. Dist.*, 86 F. Supp. 2d 354, 357-361 (S.D.N.Y. 2000), aff'd, 297 F.3d 195 (2d Cir. 2002). However, in a case such as this one, where stay-put rights arose before the hearing, a favorable decision is not required for stay-put protections to continue. An unfavorable decision terminates stay-put protections only if the parent chooses not to appeal it. See, e.g., *Schutz v. City of N.Y.*, 290 F.3d 476, 484 (2d Cir. 2002) (noting that stay-put can be terminated only by agreement of the parties, an unappealed administrative decision, or a court order).

As the Second Circuit has recognized, "it is within the district court's authority to order [a district] to reimburse [the] parents for pendency services up to the amount that it would have cost [the district] itself to provide the required pendency services." *T.M.*, 752 F.3d at 172. This "'merely requires the [Defendant] to belatedly pay expenses that it should have paid all along and would have borne in the first instance.'" *Id.* (quoting *Burlington*, 471 U.S. at 370-71).

The DOE mischaracterizes its pendency obligation as a reactive payment triggered solely by the filing of a DPC. However, under § 1415(j), the DOE's duty is not limited to the date of filing and instead mandates continuity of funding for the child's last agreed-upon placement throughout the dispute. This is not a retroactive request for payment but rather an effort to enforce the DOE's obligation to maintain funding for an established placement without interruption. *T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145.

The filing of the DPC is merely the procedural mechanism through which this ongoing obligation is enforced—it does not alter the substantive obligation, which arises under the IDEA's statutory mandate to protect the educational stability of children with disabilities. As the Second

Circuit observed in *Doe*, § 1415(j) and its implementing regulations are intended to safeguard the student's placement during disputes, ensuring that services are not disrupted while administrative and judicial proceedings unfold.

The DOE's assertion that it need not provide funding prior to the DPC filing ignores this fundamental purpose. By issuing the October 6, 2023 FOFD, the IHO confirmed that A.C.'s placement at iBRAIN is the placement to be maintained under § 1415(j). The DOE's pendency obligation to fund that placement arose at the start of the 2023–2024 school year and was not diminished or delayed by administrative delays in issuing the FOFD. While the FOFD was issued later in the year, it merely clarified an obligation that had existed since the school year began.

This Court must also consider the broader implications for unrepresented parents who may file a DPC late due to confusion, lack of resources, or procedural missteps by the school district. The IDEA was not designed to burden such parents or expose their children to unnecessary harm but to safeguard their educational rights. Limiting pendency obligations to post-DPC periods risks creating service gaps that disproportionately affect the most vulnerable families, undermining the IDEA's purpose. Plaintiffs request enforcement of the DOE's ongoing duty to continue funding A.C.'s placement at iBRAIN as required under § 1415(j). The DOE's attempt to impose artificial limitations on this duty undermines the IDEA's central goal of ensuring stability and continuity of services for children with disabilities. Accordingly, Defendants' reliance on *Doe* is misplaced and unavailing.

B. **In the Alternative, the DOE is Obligated to Fund A.C.'s Placement Due to Procedural Violations**

Even if this Court accepts Defendants' interpretation of *Doe*, the DOE's extensive procedural violations in this case necessitate retroactive funding under pendency protections. The procedural failures here far exceed any concerns addressed in *Doe*. The IHO delayed the hearing process by

8

failing to issue subpoenas in a timely manner, the DOE repeatedly requested adjournments, and statutory deadlines for issuing an IHO decision were flagrantly violated. ECF No. 1-1 at 5. Specifically, IHO Michele Host issued her FOFD 226 days after the initial complaint was filed, well beyond the 75-day statutory requirement under N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(5). Further, Defendants failed to issue a prior written notice or a school location letter for the 2023–2024 ESY and repeatedly delayed scheduling hearings for the 2022–2023 ESY.

As recognized in *S.H.W. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 4808 (JPC), 2023 U.S. Dist. LEXIS 57021, at *26–27 (S.D.N.Y. Mar. 31, 2023), pendency protections extend to cover the entirety of a child's educational placement during disputes, ensuring funding supports continuity of services throughout the duration of proceedings. The court in *S.H.W.* found that pendency reimbursement was owed retroactively to the date of the first DPC, emphasizing the importance of stability even in the face of procedural delays. *Id*. This principle applies equally here, where delays caused by the DOE disrupted A.C.'s access to services during the 2023–2024 school year.

Narrowly interpreting pendency obligations, as Defendants urge, would exacerbate the harm caused by these procedural failures and contradict the IDEA's purpose of preserving educational stability. Procedural violations such as untimely issuance of FOFDs and failure to provide necessary documentation unfairly burden children like A.C., who rely on uninterrupted services for their educational development. By recognizing the impact of these failures, this Court can ensure that the stay-put provision functions as intended: to safeguard children's rights in the face of systemic procedural deficiencies.

The Court must also consider the broader implications for unrepresented parents who may file a DPC late due to confusion, lack of resources, or procedural missteps by the school district. The IDEA was not designed to burden such parents or expose their children to unnecessary harm

but to safeguard their educational rights. Limiting pendency obligations to post-DPC periods risks creating service gaps that disproportionately affect the most vulnerable families, undermining the IDEA's purpose. By recognizing that pendency obligations should extend to the point of procedural failures by the Defendants, this Court can ensure that the stay-put provision functions as intended: a robust safeguard for all children with disabilities, not just those whose parents are fortunate enough to navigate its complexities without error.

Thus, as applied to the instant matter, Defendants' mootness argument fails because Plaintiffs have yet to receive full relief under the IDEA's pendency provisions. Plaintiffs seek retroactive funding for the entirety of the 2023–2024 school year, which Defendants have not provided. This retroactive funding is integral to fulfilling Defendants' pendency obligations. Moreover, Plaintiffs' claim for attorneys' fees remains unresolved, further underscoring the incompleteness of Defendants' compliance. Under the IDEA, pendency obligations are absolute, and partial compliance does not satisfy the statutory requirements. Here, Defendants' partial payments fall short of the IDEA's mandate to maintain A.C.'s educational placement fully and continuously.

## **CONCLUSION`**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety, and grant Plaintiff's Motion for Summary Judgment. Plaintiff additionally requests reasonable attorneys' fees and costs associated with this action, and any further relief the Court deems just and appropriate.

Dated:  December 4, 2024
       New York, New York

                                          Respectfully submitted,
                                          Brain Injury Rights Group, Ltd.
                                          *Attorneys for Plaintiffs*

By:    */S/*
       Rory J. Bellantoni (RB2901)
       300 E. 95 Street, Suite 130
       New York, NY 10128
       (646) 850-5035
       rory@pabilaw.org